Richard B. Thierolf, Jr., OSB#763565
JACOBSON THIEROLF & DICKEY, P.C.
Two N. Oakdale Avenue
Medford, OR 97501
Tel.: (541) 773-2727
rthierolf@jtdlegal.com

Matthew Rowan, OSB#104927
COLLINS ROWAN LLP
219 S. Holly Street
Medford, OR 97501
Tel.: (541) 773-3606
mrowan@collinsrowan.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| **JUAN ANTHONY SANCHO**, an individual, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> **JACKSON COUNTY, OREGON**, an Oregon governmental entity; and in their individual and official capacities as deputies employed by Jackson County Oregon Sheriff's Department, **DAVID DALTON**, **BRADY BJORKLAND**, **MICHAEL HAMMOND,** and **DOES 1 through 10**. <br><br> Defendants. | Case No: <br><br> **PLAINTIFF'S COMPLAINT** <br><br> *Action for damages for violations of Plaintiff's civil rights due to use of excessive force in the Jackson County Jail and for damages under the Oregon Tort Claims Act and common law* <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Juan Anthony Sancho ("Plaintiff")  seeks money damages pursuant to 42 USC § 1983 because jailers in the Jackson County Jail subjected him to excessive force when he was detained during the early morning of April 18, 2019; they thereby violated his rights under the

Plaintiff's Complaint - 1

Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also seeks damages under Oregon law on account of this excessive force; the torts are assault, battery, intentional infliction of emotional distress, and negligence. Plaintiff alleges (and to the extent such allegations conflict, they are made in the alternative) that at all material times:

## FACTS

1.      This court has jurisdiction of Plaintiff's claims as follows:

(a)      42 USC §1983 provides the remedy of money damages when any person, under color of state law, deprives a citizen of rights secured by the United States Constitution;

(b)      28 USC §§1331 and 1343 confer jurisdiction on United States District Courts to hear actions brought under federal civil rights laws generally, and 42 USC § 1983 in particular;

(c)      ORS 30.265 subjects public bodies in Oregon to suit for their own torts, and those of their employees acting within the scope of their employment, so long as the Plaintiff complies with the notice provisions of ORS 30.275, which plaintiff has done; and

(d)      28 USC §1367 confers jurisdiction on United States District Court for Plaintiff's state-law tort claims.

(e)      Under 28 USC §1332, this court has diversity jurisdiction over Plaintiff's state-law claims because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the parties are citizens of different states.

2.      Venue in the Medford Division of this court is proper under 28 USC §1391 because the events giving rise to Plaintiff's claims occurred in Medford, Oregon.

3.      Plaintiff was born in 1976. On April 18, 2019, he was an actor in the Oregon Shakespeare Festival in Ashland, Oregon. As an actor, Plaintiff uses the name Tony Sancho, as

opposed to his full name. One of his roles for the Oregon Shakespeare Festival was as Martín Jodes in *Mother Road*, a sequel to John Steinbeck's *The Grapes of Wrath*; the character Martín Jodes is William Joad's grandson, who travels from California to Oklahoma. Following the end of the Oregon Shakespeare Festival season in 2019, Plaintiff acted as Martín Jodes in the Arena Theatre in Washington, D.C. Plaintiff's permanent address is in South Pasadena, California.

4.     The defendants are:

(a)     Jackson County is a county in Oregon. It operates a sheriff's department, with a county jail.

(b)     Defendant Brady Bjorkland is employed by defendant Jackson County as a Jackson County Deputy Sheriff. As such, he was on duty in the Jackson County Jail when Plaintiff was detained there on April 18, 2019.

(c)     Defendant David Dalton is employed by defendant Jackson County as a Jackson County Deputy Sheriff. As such, he was on duty in the Jackson County Jail when plaintiff was brought there on April 18, 2019.

(d)     Defendant Michael Hammond is employed by defendant Jackson County as a Jackson County Deputy Sheriff. As such, he was on duty in the Jackson County Jail when Plaintiff was brought there on April 18, 2019.

(e)     Defendants DOE are others employed by defendant Jackson County as deputy sheriffs, who were on duty in the Jackson County Jail when Plaintiff was detained there on April 18, 2019.

5.     On April 18, 2019, at approximately 0230 hours, law enforcement officials from the Ashland, Oregon, Police Department brought Plaintiff to the Jackson County Jail in Medford, Oregon. They had arrested Plaintiff earlier that morning in Ashland, ostensibly for resisting arrest,

though Plaintiff was never formally charged with this crime.

6.    Plaintiff was booked into the jail. Jailers placed him in a "dry" cell in what jailers termed "administrative segregation"; the report concerning this placement states that Plaintiff was "visibly intoxicated," which is the reason for such placement. "Administrative segregation" means being put in a cell alone. Consequently, Plaintiff was in a cell by himself.

7.    Plaintiff's cell had a door with a glass window. There was no furniture, bedding, or toilet in the cell.   The only restroom facility in the cell was a metal urine grate embedded in the cell's concrete floor. The image below shows the cell immediately before jailers put him there:



8.    At first, Plaintiff was handcuffed behind his back when he was placed in the cell. The image below shows Plaintiff's initial condition when jailers brought him into the cell. The jailers pictured include defendants David Dalton, Brady Bjorkland and DOE 1.



Plaintiff's Complaint - 4

9.    Plaintiff managed to slip his body between his arms to move his cuffed hands to the front of his body; he did this in order to urinate into the grate in the middle of the concrete cell floor.   Plaintiff then attempted to communicate with jailers by knocking on the window of his cell. Jailers came into Plaintiff's cell and, once again, placed the handcuffs behind Plaintiff's back.

10.    Once again, alone in his cell, Plaintiff slipped his handcuffed hands to the front of his body for a second time. Then, Plaintiff attempted, once more, to communicate with jailers by knocking on the window of his cell. Three jailers, defendants Brady Bjorkland, David Dalton, and Michael Hammond, entered Plaintiff's cell and forcefully pulled Plaintiff to the concrete floor.

11.    Once these three jailers – Bjorkland, Dalton, and Hammond – had Plaintiff pinned to the concrete floor, and while Plaintiff was still in handcuffs, defendant Dalton delivered multiple knee strikes to the middle of Plaintiff's back while defendant Bjorkland kneeled on Plaintiff's upper back and neck.   The three jailers' use of physical force against Plaintiff continued to the point that all three were applying their full body weight on Plaintiff even though Plaintiff was lying prone on the concrete floor and not struggling.   Successive chronological still frames from these jailers' attack on Plaintiff are below:













12.     Defendants Bjorkland, Dalton, and Hammond left Plaintiff lying, face down, on the concrete floor in the cell.   Plaintiff briefly lost consciousness from these jailers kneeling on Plaintiff's neck and pinning him to the concrete floor.

13.     As shown in the still frames below, the three jailers left Plaintiff in the middle of the concrete floor and walked out of the cell, locking the door behind them; they did not place him in a recovery position.





14.    As shown below, Plaintiff was unresponsive after the jailers left the cell. This lasted for approximately 15 seconds.



15.    Afterwards, Plaintiff managed to get up. He knocked on the door again. Two jailers – defendants Hammond and Bjorkland – then reentered the cell. These two jailers handcuffed Plaintiff to the urine grate in the middle of the concrete floor, leaving Plaintiff to lie there in a pool of his own urine. No jailers released Plaintiff from the urine grate in the concrete floor until approximately 0535 hours that morning. Throughout this time, from when he first came to the jail, Plaintiff was in handcuffs. He was handcuffed to the urine grate for approximately 2.5 hours and kept in handcuffs another half hour after that. The pictures on the following page show the condition Plaintiff was left in by defendants Bjorkland and Hammond when they handcuffed him to the urine grate.





16.     Defendants subjected Plaintiff to excessive force, including, but not limited to, handcuffing Plaintiff behind his back, leaving him that way in a cell with no other occupants; entering Plaintiff's cell and violently taking him to the concrete floor; delivering unnecessary focused knee strikes to Plaintiff's back; kneeling on Plaintiff's neck, impeding Plaintiff's airway, and causing Plaintiff to lose briefly consciousness; and chaining Plaintiff to the urine grate in the concrete floor and leaving Plaintiff to lie alone there for approximately 2.5 hours. Throughout this time, Plaintiff was alone and posed no threat of harm to anyone.

17.     As stated above, the jailers who initially pulled Plaintiff to the floor are defendants Bjorkland, Dalton, and Hammond. Defendant Dalton is the jailer who delivered unnecessary knee strikes to Plaintiff's mid-back. Defendant Bjorkland is the jailer who kneeled on Plaintiff's upper back and neck. The two jailers who chained Plaintiff to the grate are defendants Bjorkland and Hammond. Other jailers, who saw Plaintiff chained in his cell but did nothing to intercede or protect Plaintiff, include defendant Dalton and defendants DOE, who will be identified as soon as possible.

18.     At the time of Plaintiff's lodging at the Jackson County Jail, Defendant Jackson County had law enforcement policies ("LE policies") for dealing with people in Sheriff's Department custody. All deputy sheriffs are required to know and understand these LE policies. When Plaintiff was lodged in the Jackson County Jail, the following policies were in effect:

(a)     LE policy 910.1 applied to intoxicated persons. LE policy 910.1.3 directed that when a person lodged in the Jackson County Jail is under the influence of intoxicants, "visual checks of [such, person] shall be made at a minimum of every fifteen (15) minutes…"

(b)     LE policy 300.1 provided "guidelines on the reasonable use of force." LE

policy 300.2.1 directed that, "Any deputy present and observing another deputy using force that is clearly beyond that which is objectively reasonable…shall…intercede to prevent the use of unreasonable force."

        (c)     Under LE policy 300.3.2, factors used to determine reasonableness of force included (to quote the policy itself):

- Immediacy and severity of the threat to deputies or others.

- The conduct of the individual being confronted, as reasonably perceived by the deputy at the time.

- Deputy/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of deputies available vs. subjects).

- The effects of drugs or alcohol.

- Subject's mental state or capacity.

- Proximity of weapons or dangerous improvised devices.

- The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

- The availability of other options and their possible effectiveness.

- Seriousness of the suspected offense or reason for contact with the individual.

- Training and experience of the deputy.

- Potential for injury to deputies, suspects and others.

- Whether the person appears to be resisting, attempting to evade arrest by flight or is attacking the deputy.

- The risk and reasonably foreseeable consequences of escape.

- The apparent need for immediate control of the subject or a prompt resolution of the situation.

- Whether the conduct of the individual being confronted no longer

reasonably appears to pose an imminent threat to the deputy or others.

- Prior contacts with the subject or awareness of any propensity for violence.

- Any other exigent circumstances.

19. Plaintiff asked jailers for permission to make a phone call to his wife or someone else who might help him, but he was not allowed to do so until approximately 1130 hours.

20. Plaintiff was released from the jail at approximately 1245 hours on April 18, 2019. On April 19, 2019, Plaintiff attempted to go to an urgent care clinic on account of physical injuries he sustained from the jailers' use of physical force and from being chained to the urine grate for approximately 2.5 hours; however, urgent care refused to see Plaintiff.

21. On April 20, 2019, Plaintiff went to the emergency room at Asante Ashland Community Hospital to receive treatment for pain in his right wrist and hand and generalized bruising with abrasions from the jailers' assault described above. In particular, this included bruising of the left knee, abrasions on his right and left elbows, and abrasions on his right wrist, defused tenderness over his right hand and right wrist, and swelling of the right hand. At the emergency room, x-rays were taken, which showed a small joint effusion in his left knee. Plaintiff declined offered pain medication. He was discharged to go home.

22. As a result of the jailers' actions in the jail, combined with their failure to help Plaintiff, all as explained above, Plaintiff continues to suffer pain and minor physical impairment. This makes it more difficult for him to act in the roles he plays than would be the case if the jailers had not used excessive force against him in the jail.

23. Plaintiff suffered severe emotional distress as a result of the force used against him in the jail; this emotional distress is ongoing.

## DAMAGE AMOUNT

24.    Plaintiff is damaged in an amount to be determined at trial. The bases for his damages include physical and emotional pain, suffering, and distress; and any past and future cost for health care and therapy to deal with the physical injuries, pain and suffering, and emotional distress caused by the excessive force used against Plaintiff on April 18, 2019.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### Under 42 USC §1983, for violation of Plaintiff's civil rights.

25.    Paragraphs 1 – 24 above are fully incorporated herein by reference.

26.    For purposes of the claim set forth in paragraphs 25 – 28 herein, the individual defendants Bjorkland, Dalton, Hammond, and DOES, acted:

      (a)    Under color of state law; but

      (b)    Outside the scope of their public employment or duties; that is, they acted in their individual capacities.

### Count One: Against the jailers who took Plaintiff down and chained him to the urine grate.

27.    By their actions described above, whereby they subjected Plaintiff to excessive and, indeed, brutal force, defendants Bjorkland, Dalton, and Hammond violated Plaintiff's federal constitutional rights under color of state law. These rights include:

      (a)    The right to be free from unreasonable seizure under the Fourth Amendment;

      (b)    The right of due process, under the Fourteenth Amendment, to be free from arbitrary and capricious physical punishment, or punishment that is wholly unrelated to the legitimate goal of maintaining order in a jail; and

(c)    The right of due process, under the Fourteenth Amendment, to be free from official behavior that is so brutal and offensive to human dignity that shocks the conscience.

Thus, said defendants are liable to Plaintiff, pursuant to 42 USC §1983, for damages as set forth in paragraph 24 above.

28.    In depriving Plaintiff of his constitutional rights as set forth in paragraph 27 above, said Defendants acted with willful and wanton disregard of Plaintiff's constitutional rights. These Defendants are therefore liable to Plaintiff, pursuant to 42 USC §1983, for punitive damages in addition to the damages alleged in paragraph 24 above. The amount of punitive damages is to be determined at trial. Plaintiff seeks punitive damages solely against defendants Bjorkland, Dalton, and Hammond.

### Count Two: Bystander liability

29.    All defendants, including Defendants DOE, violated both Plaintiff's constitutional rights set forth in paragraph 27 above and LE policy 300.2.1 when they saw: (a) defendant Bjorkland kneeling on Plaintiff's neck or upper back causing Plaintiff to temporarily lose consciousness; (b) Plaintiff lying prone on the concrete jail floor, face down, in a position that placed Plaintiff at heightened risk for positional asphyxia; and (c) Plaintiff chained to the urine grate in the jail cell, and they nevertheless failed to intercede and protect Plaintiff. As jailers, said defendants could and should have interceded and protected Plaintiff. The purpose of LE policy 300.2.1 is to protect the Fourth Amendment and Fourteenth Amendment rights of prisoners detained in the Jackson County Jail who have not been convicted of a crime, such as Plaintiff. Pursuant to 42 USC §1983, said defendants are therefore liable to Plaintiff for damages as set forth in paragraph 24 above.

**SECOND CLAIM FOR RELIEF:**
**Under the Oregon Tort Claims Act**

30.     Paragraphs 1 - 24 above are fully incorporated herein by reference.

31.     For purposes of Plaintiff's claims under the Oregon Tort Claims Act, the individual Defendants acted in the course and scope of their employment with defendant Jackson County, Oregon.

32.     Plaintiff provided defendant Jackson County with notice as required by ORS 30.275(2)(b), (4), and (5)(b), by causing to be delivered to Joel Benton, Jackson County Counsel, a written notice in compliance with said statutes, within the time limited therefor.

**Count One: Intentional torts.**

33.     Defendant Jackson County is liable to Plaintiff for damages, as set forth in paragraph 24 above, for:

        (a)     Assault;

        (b)     Battery; and

        (c)     Intentional infliction of emotional distress.

This is because defendants Bjorkland, Dalton, and Hammond acted intentionally in subjecting Plaintiff to excessive force as explained above.

**Count Two: Negligence.**

34.     Sheriff Nathan Sickler, the official in charge of the Jackson County Jail, stated to the *Medford Mail Tribune* newspaper in an article titled "Local police condemn killing of George Floyd," published on June 3, 2020 the following:

        (a)     "People lying on the ground while handcuffed can die from positional asphyxia."

        (b)     "When someone is putting weight on an individual, that's a really

dangerous situation[.]"

      (c)    "You are supposed to get people off their stomachs.   Don't keep applying pressure – especially when the person is compliant. . . [doing] . . . so [is] contrary to good policing."

      35.    The force used against Plaintiff by defendants Bjorkland, Dalton, and Hammond was excessive according to the standards for reasonable force in LE policy 300.1 and also in light of the above-quoted factors, explained by Sheriff Nathan Sickler, for how people in detention should be treated. Among other things, the following stills show that Defendants Bjorkland, Dalton, and Hammond took actions that Sheriff Sickler directly condemned as being "contrary to good policing."

      (a)    Plaintiff was "left on his stomach."



      (b)    Defendants Dalton, Hammond, and Bjorkland continuously "appl[ied] pressure" – i.e. their collective full body weight on Plaintiff – though Plaintiff was "being compliant."

Plaintiff's Complaint - 16



(c)      Defendant Bjorkland continuously "appl[ied] pressure" – i.e. his full body weight on Plaintiff – though Plaintiff was "being compliant."   On information and belief, this still actually shows defendant Dalton checking Plaintiff's breathing while defendant Bjorkland's knee remains on Plaintiff's back.



36.     On information and belief, Plaintiff alleges that said defendants were familiar with the policies explained in paragraph 18 above, and also knew of the concerns explained by Sheriff Sickler as set forth in paragraph 34 above. Thus, said defendants either knew or should have known that, under the circumstances explained above, they were subjecting Plaintiff to a substantial risk of physical pain, suffering, emotional distress, and even death.   Plaintiff, in fact, suffered such physical pain – even losing consciousness – and emotional distress. Said defendants

could have prevented such injury but failed to take reasonable steps to do so.

37.     As a result of the facts set forth in paragraphs 30-32 and 34-36 above, Defendant Jackson County is liable to Plaintiff for damages, as set forth in paragraph 24 above, for negligence.

### THIRD CLAIM FOR RELIEF:
### Against the individual defendants for actions outside the scope of their public employment or duties.

38.     Paragraphs 1-24 and 33-36 above are fully incorporated herein by reference.

39.     Defendants Bjorkland, Dalton, and Hammond, and also defendants DOE, acted outside the scope of their pubic employment or duties.

40.     Said defendants are liable to Plaintiff for damages as set forth in paragraph 24 above, for:

       (a)     Assault;

       (b)     Battery;

       (c)     Intentional infliction of emotional distress; and

       (d)     Negligence.

41.     In committing the torts listed in paragraph 40(a) – (c) above, defendants Bjorkland, Dalton, and Hammond acted with willful and wanton disregard of Plaintiff's right to be free from bodily and emotional harm, so that they are also liable to Plaintiff for punitive damages in an amount to be determined at trial.

### ATTORNEY FEES

42.     Defendants Bjorkland, Dalton, and Hammond, and also defendants DOE, are liable to Plaintiff for his reasonable attorney fees under 42 USC §1988.

## REQUEST FOR JURY TRIAL

43.    Plaintiff requests trial by jury.

WHEREFORE, Plaintiff prays for judgment in his favor and against defendants:

1.    For compensatory damages as set forth in paragraph 24 above;

2.    For punitive damages from defendants Bjorkland, Dalton, and Hammond as set forth above in paragraphs 28 and 41;

3.    For Plaintiff's reasonable attorney fees from the individual Defendants under 42 USC §1988;

4.    For Plaintiff's costs, disbursements, and prevailing party fees; and

5.    For such other relief as the court deems appropriate.

July 28, 2020                          Respectfully submitted,

JACOBSON, THIEROLF & DICKEY, P.C.

By:    /s/ Richard B. Thierolf, Jr.
Richard B. Thierolf, Jr. OSB#763565
Of Attorneys for Plaintiff
2 North Oakdale Avenue
Medford, OR 97501
Tel.: (541) 773-2727
Fax: (541) 734-7269
E-mail: rthierolf@jtdlegal.com


COLLINS ROWAN, LLP

By:    /s/ Matthew Rowan
Matthew Rowan OSB#104927
Of Attorneys for Plaintiff
219 S. Holly Street
Medford, OR 97501
Tel.: (541) 773-3606
Fax: (541) 600-4611
E-mail: mrowan@collinsrowan.com